PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 1998**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

**PATRICK FISHER**
**Clerk**

---

KAREN ERTLE, JAMES LOVERIDGE,
PEGGY SISK, KAREN SUNSHINE,
TED WHALEN, PETRA ANDERSON,
JAMES ARCHULETA, CAMBIA
BLAIR, LISA FITZPATRICK,
THERESA GROOMER, PAULETTE
GUENETTE, LISA HANSEN,
KIMBERLY HINCHEY, SUZANNE
JEANSONNE, MITCHELL KEENAN,
MONIQUE KEOHANE, NATALIE
ORDAKOWSKI, BONNIE PACELLO,
BERYL PHILLIPS, AIDAH
POEHLMANN, CHERI SCHNORR,
AND DAVID SOUTHERN,

      Plaintiffs - Appellants,

v.

CONTINENTAL AIRLINES, INC.,

      Defendant - Appellee.

No. 96-1495

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-WY-1220-WD)

---

David J. Dansky (Nathan D. Chambers with him on the brief) of Chambers, Dansky, and
Hansen, P.C., Denver, Colorado, for Plaintiffs - Appellants.

Daniel R. Satriana, Jr. (Alan Epstein with him on the brief) of Hall & Evans, L.L.C.,
Denver, Colorado, for Defendant - Appellee.

Before BALDOCK, and BRORBY, Circuit Judges, and BROWN,* Senior District Judge.

_____

BALDOCK, Circuit Judge.

_____

This appeal requires us to determine whether the district court correctly held that Plaintiff's state law breach of contract and fraudulent concealment claims are preempted under the Railway Labor Act (hereinafter RLA), 45 U.S.C. §§ 151-163, 181-188. Reviewing the district court's holding *de novo*, see <u>Fry v. Airline Pilots Ass'n Int'l.</u>, 88 F.3d 831, 835 (10th Cir. 1996), we conclude the district court correctly held that the RLA preempts Plaintiffs' breach of contract claims. We conclude, however, that the district court erroneously held that the RLA preempts Plaintiffs' fraudulent concealment claims. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

I.

Plaintiffs are former Continental Airlines flight attendants. During their employment with Continental, Plaintiffs were party to a collective bargaining agreement (hereinafter CBA) entered into by Continental and Plaintiffs' authorized union representative, the International Association of Machinists and Aerospace Workers. Under the CBA, Plaintiffs agreed that Continental retained:

full and complete right and power to exercise its reasonable management

_____

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

2

authority in the operations of its business. Such management authority includes, but is not limited to . . . the right to determine and change the number, size and location of bases and facilities, and the number of employees and the work to be done at each . . . .

Aple. Supp. App. at 17-18. Plaintiffs' also agreed to certain provisions regarding grievance procedures, flight passes for attendants and system furloughs.

In 1994, Continental offered Plaintiffs "early out" retirement packages. The packages were not offered systemwide pursuant to the collective bargaining agreement. Instead, the packages were offered individually to certain qualified flight attendants, including those working out of Continental's Denver base. Under the "early out" agreements, qualified attendants received flight passes for use on Continental and Continental Express flights. Continental also offered a lump sum cash severance payment based on years of experience to flight attendants actively flying when the offer was extended.

Plaintiffs opted to participate in the "early out" program. After Plaintiffs made this election, however, Continental significantly cut back flight service to and from Denver. Estimating that Continental's action reduced the value of their flight pass benefits by 85%, Plaintiffs filed suit against Continental in Colorado state court alleging breach of contract and fraudulent concealment under Colorado law. Continental removed the case to federal court and filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed R. Civ. P. 12(b)(1). As grounds for dismissal, Continental asserted that Plaintiffs' claims were "minor disputes" preempted by the Railway Labor Act. The

3

district court agreed, and dismissed Plaintiffs' claims.

## II.

Congress passed the Railway Labor Act "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). To achieve this goal, Congress provided for a mandatory arbitral mechanism, which vests exclusive jurisdiction over two classes of disputes with the National Railroad Adjustment Board. The first class, "major disputes", relate to "the formation of collective bargaining agreements or efforts to secure them." Id. The second class, "minor disputes", relate to disagreements over the meaning of a bargained-for labor agreement" Id. at 252-32. "Thus, major disputes seek to create contractual rights, "minor disputes" seek to enforce them." Id. at 253 (internal quotations omitted).

The threshold question in determining whether a state law claim is a "minor dispute" preempted under the RLA is whether resolution of the claim requires interpretation or application of a CBA. Fry, 88 F.3d at 836. Because plaintiffs may artfully plead their causes of action to avoid findings that their claims are "minor disputes" arising out of CBAs, we have held that state law claims may also be preempted as "minor disputes" if the claims are "inextricably intertwined" with a CBA. Id. Therefore, we look beyond the allegations of the complaint to determine if the state law claims "actually [arise] in some manner from a breach of the defendants' obligations

4

under a collective bargaining agreement." Id. (internal quotations omitted). If we determine that the dispute arises from rights created by the terms of a labor contract, the claims are preempted. Id. Claims are also preempted if "they implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship." Id. Where resolution of a state law claim requires only mere reference to a CBA, however, the claim is not a "minor dispute" preempted under the RLA. Id.

Moreover, a state law claim is not automatically preempted simply because the facts underlying the claim may also support an action pursuant to a CBA. Norris, 512 U.S. at 261. In fact, resolution of a state law claim may require precisely the same factual analysis as resolution of the same problem under a CBA and still not require any application or interpretation of the CBA. Thus, where resolution of a state law claim requires a pure factual inquiry that does not turn on the meaning of any provision in the collective bargaining agreement, the claim is not preempted by the RLA. Id. (citing Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988)). With this background in mind, we proceed to the present appeal.

## III.

## A.

The district court held that Plaintiffs claims were minor disputes and thus preempted under the RLA. To determine the propriety of the district court's holding, we must decide whether resolution of Plaintiffs' claims requires interpretation or application

5

of the CBA.  Fry, 88 F.3d at 835.  Plaintiffs argue that the district court erroneously held that resolution of their state law breach of contract claims required application or interpretation of the CBA.  Plaintiffs contend that the contractual rights they seek to vindicate arise not from the CBA, but from the "early out" agreements themselves.  Plaintiffs argue that under the "early out" agreements, Continental promised to maintain a "roughly constant" level of service to and from Denver.  Plaintiffs assert that by drastically cutting back its level of flight service to Denver, Continental breached the "early out" agreements and as a result deprived Plaintiffs of the benefit of their bargains.  Thus, Plaintiffs maintain that their breach of contract claims may be resolved under Colorado state law without interpreting or applying the CBA.  We disagree.

At first glance, Plaintiffs' argument that their breach of contract claims may be resolved without interpretation or application of the CBA has some appeal.  Indeed, if, as Plaintiffs contend, Continental promised under the "early out" agreements to maintain a "roughly constant" level of service to and from Denver, there would be no need to interpret or apply the CBA to determine whether Continental breached the agreements.  The "early out" agreements, however, are silent regarding the level of service Continental was to maintain and the existence of the term cannot be inferred from the document itself.  Thus, the term Plaintiffs allege Continental breached is ambiguous and factors outside the four corners of the document must be considered in order to determine whether Continental promised to maintain a certain level of flights to and from Denver.  See

6

Boyer v. Karakehian, 915 P.2d 1295, 1299 (Colo. 1996).

The CBA speaks directly to Continental's right to alter the level of service it provides to Denver. Plaintiffs, as parties to the CBA, agreed that Continental retained full and complete authority to "determine the number, size and location of bases and facilities . . . ." Plaintiffs' now argue that under the "early out" agreements, Continental bargained away this authority and was bound to maintain a certain level of flight service. On the record before us, we cannot see how Plaintiffs' breach of contract claims may be resolved without interpreting and applying the CBA. Indeed, considering the ambiguity of the contract term Plaintiffs' contend Continental breached, resolution of the claims appears inextricably intertwined with Plaintiffs' agreement under the CBA. See Fry, 88 F.3d at 836. Therefore, we affirm the district court's Fed. R. Civ. P. 12(b)(1) dismissal of Plaintiffs' breach of contract claims.

B.

Plaintiffs next allege that Continental fraudulently concealed its plan to drastically reduce its flight service to and from Denver in order to induce Plaintiffs to accept its "early out" offer. To recover damages for fraudulent concealment under Colorado law, Plaintiffs must prove that: (1) Continental concealed a material existing fact that in equity and good conscience should have been disclosed; (2) Continental knew that the fact was being concealed; (3) Plaintiffs did not know of the fact that Continental allegedly concealed; (4) Continental intended that the concealment be acted upon; and (5) Plaintiffs

took action on the concealment which resulted in damages.  See Kopeikin v.  Merchants Mortgage & Trust Corp., 679 P.2d 599, 601 (Colo. 1984).  Keeping in mind the factual inquiry required above -- whether Continental knowingly concealed a material fact, whether Plaintiffs were ignorant of the concealed fact, whether Continental concealed the fact to induce Plaintiffs to act, and whether Plaintiffs acted in reliance on the concealment -- we must determine whether the CBA must be interpreted or applied to resolve Plaintiffs' claims.  See Luecke v.  Schnucks Markets, Inc., 85 F.3d 356, 359 (8th Cir. 1996).

Relying exclusively on one portion of the CBA, Continental insists that Plaintiffs' fraudulent concealment claims cannot be resolved without interpretation or application of the CBA.  Specifically, Continental argues that "[b]ecause Plaintiffs' claims are based on Continental's decision to reduce the number of flights to and from Denver, Plaintiffs' claims necessarily involve interpretation of the CBA, which gives sole authority to Continental to 'determine and change the number, size and location of bases and facilities.'"  Thus, Continental contends that Plaintiffs' fraudulent concealment claims are

preempted under the RLA.[2]  Continental misperceives the nature of Plaintiffs' claims.

Plaintiffs do not dispute Continental's right to alter its level of service to and from Denver under the CBA.  Instead, Plaintiffs claim that under Colorado law, Continental had a duty to disclose its intention to scale back service, which it failed to perform.  Resolution of Plaintiffs' claims depends not on interpretation of the CBA, but on a factual determination of whether Plaintiffs can prove the elements required to recover for fraudulent concealment.  Either unable or unwilling, Continental has failed to explain what relevance the CBA has to these factual inquiries and, on the record before us, we fail to see how interpretation of the CBA is inextricably intertwined with the resolution of Plaintiffs' state law claims.  Accordingly, we conclude that Plaintiffs' fraudulent concealment claims are not preempted, reverse the district court's Fed. R. Civ. P. 12(b)(1) dismissal of those claims and remand the claims to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

---

[2]	Continental further notes that Plaintiffs' union has filed a grievance pursuant to the CBA regarding the "early out" agreements.  This action, Continental argues, is "[f]urther evidence that Plaintiffs' claims involve interpretation of the CBA and are thus preempted by the RLA . . . ."  We are not persuaded.  The mere existence of a CBA-based remedy does not deprive Plaintiffs of independent state law remedies.  Norris, 512 U.S. at 261.