Gerald M. THOMAS, Plaintiff,

v.

NATIONAL ASSOCIATION OF LET-TER CARRIERS; and Marvin Runyon, Postmaster General of the United States Postal Service, Defendants.

No. 98–1314–WEB.

United States District Court, D. Kansas.

Jan. 5, 1999.

Marc A. Powell, Powell & Brewer, LLP, Wichita, KS, for Plaintiff.

Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, Connie R. Calvert, Office of United States Attorney, Wichita, KS, Peter D DeChiara, Cohen, Weiss & Simon, New York,, for Defendants.

### Memorandum and Order

BROWN, Senior District Judge.

This matter is before the court on the defendants' motions to dismiss the complaint. Plaintiff, a former letter carrier, was terminated from his employment with the Postal Service after refusing to work on Saturdays due to his religious beliefs. In a separate lawsuit (*Thomas v. Runyon*, No. 97–1324), plaintiff alleged that the Postal Service violated his rights under Title VII of the federal Civil Rights Act.[1] Plaintiff subsequently filed this action in state court against the Postal Service and the National Association of Letter Carriers (hereinafter "the Union") alleging claims under Kansas law for civil conspiracy and wrongful discharge in violation of public policy. The action was removed to this court and the defendants now move for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) & (b)(6). The court finds that oral argument would not assist in deciding the issues presented.

### I. Standard Governing Motions to Dismiss.

At the outset the court takes note of the general standard governing a motion to dismiss:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Under the limited review applicable at this stage of the litigation, the accepted rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### II. Facts.

On July 31, 1997, plaintiff filed a separate action in this court alleging that the Postal Service had unlawfully discharged him on May 31, 1996, in violation of Title VII. Specifically, plaintiff contended that his termination constituted employment discrimination because the Postal Service failed to reasonably accommodate his sincerely-held religious belief that he should refrain from working on Saturdays.

---

1. In a separate Memorandum and Order filed contemporaneously with this order, the court finds that the defendant Postal Service is entitled to summary judgment in Case No. 97–1324.

*Thomas v. Runyon,* No. 97–1324, Doc. 29 at 4.

On May 8, 1998, plaintiff moved for leave to amend the complaint in Case No. 97–1324 to add the local affiliate of the National Association of Letter Carriers as a defendant and to assert a claim against the Union for breach of the duty of fair representation. On June 16, 1998, Magistrate Judge Reid denied the motion on the grounds that the proposed amendment was untimely.

On August 26, 1998, plaintiff filed his petition in the instant action in the District Court for the Eighteenth Judicial District, Sedgwick County, Kansas, naming the National Association of Letter Carriers and the Postal Service as defendants. The petition alleges that on May 31, 1996, plaintiff was discharged from his position as a letter carrier with the Postal Service (Petition at ¶ 5); that his termination constituted wrongful discharge in violation of Kansas public policy protecting the free exercise of religion (*Id.* at ¶ 6); that the two defendants wrongfully agreed that plaintiff should be discharged (*Id.* at ¶ 7); that the defendants acted in concert to discriminate against plaintiff due to his religious belief (*Id.* at ¶ 8); and that the wrongful agreement of the defendants constitutes the tort of civil conspiracy under Kansas law. (*Id.*).

The Postal Service removed the action to this court on August 28, 1998.

III. *Postal Service's Motion to Dismiss.*

 The Postal Service first argues that plaintiff's state law claims should be dismissed because Title VII constitutes the exclusive remedy for claims of discrimination in federal employment. (*Citing Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Plaintiff responds with two arguments, neither of which the court finds persuasive. First, plaintiff asserts that "the claims presented here are not for discrimination" because the duty allegedly violated by the Postal Service

arises under Kansas law. Pl .Resp. at 2. This argument is unavailing in view of the complaint, which alleges that the Postal Service discharged plaintiff in violation of his right to the free exercise of religion and that the defendants discriminated against plaintiff due to his religious beliefs about the Sabbath. Such claims unquestionably fall within the scope of Title VII's prohibition on employment discrimination on the basis of religion. Secondly, plaintiff cites *Prost v. Woolworth,* 647 F.Supp. 946 (D.Kan.1985) for the proposition that Kansas law recognizes that employees may not be discharged in violation of state public policy. Pl.Resp. at 2. A case involving a private employee, however, does not implicate questions of sovereign immunity and has no bearing on the rule that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown,* 425 U.S. at 835, 96 S.Ct. 1961. *Cf. Id.* at 833, 96 S.Ct. 1961 (recognizing distinction between private and federal employment). "[A] federal employee's only avenue for judicial relief from federal employment discrimination is through Title VII." *Belhomme v. Widnall,* 127 F.3d 1214, 1217 (10th Cir.1997). Under the circumstances, the court finds that plaintiff's state law claims against the Postal Service are preempted by Title VII and must be dismissed. *See Boyd v. Runyon,* No. 94–1557, 1996 WL 294330 (D.Kan., May 23, 1996) (state law discrimination claims preempted by Title VII); *Schroder v. Runyon,* 1 F.Supp.2d 1272 (D.Kan.1998) (state retaliation claim barred by Title VII). In view of this ruling the court need not address the other arguments advanced by the Postal Service.

IV. *NALC's Motion to Dismiss.*

The Union contends the allegations against it in the complaint constitute a claim for breach of the duty of fair representation. Because such a claim is governed exclusively by federal law, the Union argues that plaintiff's state law claims are preempted. The Union further contends

that any claim for breach of the duty of fair representation is barred by the six-month statute of limitations governing such claims. The Union accordingly moves to dismiss the complaint.

In response, plaintiff contends that "state law claims for civil conspiracy and wrongful discharge in violation of public policy are not within the scope of the federal labor laws." Pl.Resp. at 4. Plaintiff maintains that *Sutton v. Southwest Forest Industries, Inc.,* 628 F.Supp. 1034 (D.Kan.1985) recognized that a claim for retaliatory discharge in violation of public policy was not preempted by the National Labor Relations Act, and he argues that "a wrongful discharge claim due to religious discrimination and a retaliatory discharge claim due to whistle blowing are similar in nature so as to preclude federal preemption." Pl.Resp. at 7. As for civil conspiracy, plaintiff argues that Georgia and South Carolina courts have found that such claims are not preempted. Plaintiff argues that the exceptions to preemption recognized in *Farmer v. United Brotherhood of Carpenters Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) apply here.

■ As a statutorily-authorized exclusive bargaining agent, the Union had an implied duty to fairly represent the employees for whom it acted, both in its collective bargaining and in its enforcement of the collective bargaining agreement. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).[2] A union may be liable for breach of the duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. 903. In authorizing suits for breach of this duty, Congress intended such claims to be decided exclusively by federal law. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202,

209–210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Because of this, several courts have held that state law claims are preempted if they attempt to impose obligations on a union that are subsumed by the duty of fair representation. *See Sheehan v. United States Postal Service,* 6 F.Supp.2d 141, 150–51 (N.D.N.Y.1997); *BIW Deceived v. Local S6,* 132 F.3d 824, 830 (1st Cir.1997); *Welch v. Gen. Motors Corp.,* 922 F.2d 287, 294 (6th Cir.1990).

■ If the above cases are correct, then plaintiff's claims would clearly be preempted. It can hardly be argued that claims of invidious discrimination are outside the scope of the duty of fair representation, given that the Supreme Court first recognized the duty in a series of cases involving race discrimination. *See Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 199, 65 S.Ct. 226, 89 L.Ed. 173 (1944). *See also Greenslade v. Chicago Sun–Times, Inc.,* 112 F.3d 853, 867 (7th Cir. 1997) (DFR claim may be based on sex discrimination). The duty of fair representation requires the Union to "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This duty would certainly encompass the alleged actions of the Union of "act[ing] in concert [with the Postal Service] to discriminate against plaintiff due to his religious belief in observing the Sabbath" and "agree[ing] that plaintiff should be discharged." Petition at ¶¶ 7 & 8. *Cf. Equal Empl.Opp.Comm.,* 597 F.Supp. 1007, 1013 (D.P.R.1984) (examining whether Union breached its DFR by religious discrimination).

■ The law of preemption in this area is decidedly complex, and, as plaintiff

---

**2.** The Union's duty of fair representation in this case is enforceable under 39 U.S.C. § 1208(b). Because that section is analogous to § 301(a) of the Labor Management Relations Act, case law developed under § 301(a) for private sector employees is equally applicable to actions brought by postal service employees under § 1208(b). *Eginton v. Runyon,* No. 97–6002, 1997 WL 706514 at *1, n. 1 (10th Cir., Nov. 13, 1997).

points out, there are numerous exceptions to preemption in cases under § 301. In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), for example, the Court held that a state-law retaliatory discharge claim was not preempted because it turned on purely factual questions regarding the employer's motivation behind the discharge and did not require interpretation of any term of the agreement. *Id.* at 407, 108 S.Ct. 1877. Under this and other cases, the threshold question in determining whether a state law claim is preempted is whether resolution of the claim requires interpretation or application of the collective bargaining agreement. *Fry v. Airline Pilots Ass'n. Intern.,* 88 F.3d 831, 836 (10th Cir.1996). In this context, a CBA is viewed as more than just the sum of its parts: "[i]t comprises express provisions, industry standards, and 'norm[s] that the parties have created but omitted from the collective bargaining agreement's express language.'" *Id.* (*quoting Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 2247, 129 L.Ed.2d 203 (1994)). Thus, state law claims are preempted not only if they depend on a right found in the agreement, "but also if they implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship." *Fry,* 88 F.3d at 836. Preemption extends to any suit that "is inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. 1904. At the same time, where resolution of the state claim requires only "mere reference to" a collective bargaining agreement, it is not preempted. *See Ertle v. Continental Airlines, Inc.,* 136 F.3d 690, 693 (10th Cir. 1998). This is true even if the facts underlying the state claim might also support an action pursuant to a collective bargaining agreement. *Id.*

Regardless of how the allegations in this complaint are characterized, the court concludes that they are inextricably intertwined with the terms of the collective bargaining agreement.[3] This dispute arose because of a provision adopted by the Union pursuant to the collective bargaining agreement under which letter carriers were required to work five out of every six Saturdays. Plaintiff contends that the Union "unlawfully agreed to hinder Mr. Thomas in his attempts to find a solution which would allow him to remain an employee," Pl.Resp. at 1, which is an apparent reference to the Union's refusal to grant plaintiff a waiver from the requirements of the CBA. Assuming that under the Kansas state law asserted by plaintiff the Union had a duty to reasonably accommodate plaintiff's religious beliefs, a resolution of whether that duty was breached could only be determined by interpreting and applying the Union's responsibilities to all of its members as expressed in the collective bargaining agreement. *Cf. Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 85, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (where shift preferences were determined by seniority, granting shift preference to one employee based on his religious beliefs would have deprived other employees of their contractual rights under the collective bargaining agreement); *Turpen v. Mo–Kan–Tex. R.R. Co.,* 573 F.Supp. 820, (N.D.Tex.1983) (waiver of CBA's seniority provisions based on plaintiff's religious beliefs would have conflicted with the interests of all other members covered by the CBA), *aff'd,* 736 F.2d 1022 (5th Cir.1984). This unavoidable application of the collective bargaining agreement is sufficient to distinguish this case from *Sutton* and *Farmer,* supra, where no preemption was found. And clearly, the alleged failure of the Un-

---

3. The courts have noted that plaintiffs often attempt to avoid federal jurisdiction "by framing their complaints in terms of such diverse theories as wrongful discharge, intentional infliction of emotional distress, conspiracy and misrepresentation." *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 530 (10th Cir.1992). Because of this, the court "must look beyond the allegations of the complaint ... to determine whether the wrong complained of actually arises in some manner from a breach of the defendants' obligations under a collective bargaining agreement." *Id.*

ion to protect the plaintiff's job or to more actively challenge his dismissal necessarily stems from its duty as plaintiff's exclusive bargaining representative pursuant to federal labor law. In sum, the claims in this complaint are inextricably intertwined with the Union's negotiation and enforcement of the collective bargaining agreement. To argue that the claims are independent of the agreement is to ignore the basis of the dispute. Under the circumstances, the court concludes that plaintiff's state law claims are preempted by federal labor law. *See Peterson v. Air Line Pilots Assn., Int'l.,* 759 F.2d 1161 (4th Cir. 1985) (civil conspiracy claim preempted by § 301); *Roberts v. Walt Disney World Co.,* 908 F.Supp. 913 (M.D.Fla.1995) (same); *Snay v. U.S. Postal Service,* 31 F.Supp.2d 92, 96 (N.D.N.Y.1998) (state law claim for sex discrimination against union preempted by federal duty of fair representation); *Sheehan v. U.S. Postal Service,* 6 F.Supp.2d 141, 148 (N.D.N.Y. 1997) (claims for wrongful discharge and conspiracy preempted by § 301).

Although the allegations in the complaint could be sufficient to state a claim for violation of the federal duty of fair representation, plaintiff does not dispute that any such claim is barred by the applicable six-month statute of limitations. *See DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 169–171, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (applying six-month limitations period). Accordingly, the claims must be dismissed.

Even if plaintiff's state law claims were not preempted, the court would still find that the complaint fails to state a claim upon which relief can be granted. Given the adequate statutory remedy available under Title VII for religious discrimination in employment,[4] the court concludes that Kansas would not recognize the tort of wrongful discharge in violation of public policy under these circumstances. *Cf.*

---

4. No Title VII claim was asserted against the Union in this case or in *Thomas v. Runyon,*

*Flenker v. Willamette Indus., Inc.,* 266 Kan. 198, 967 P.2d 295 (1998) (common law remedy recognized where the statutory remedy provided by OSHA was inadequate). Plaintiff's claim for civil conspiracy likewise fails, as the complaint mentions no unlawful act in support of the conspiracy except for the allegedly wrongful discharge mentioned above. *See Vetter v. Morgan,* 22 Kan.App.2d 1, 913 P.2d 1200 (1995) (elements of claim include unlawful overt act).

## V. Conclusion.

The Motions to Dismiss of defendant National Association of Letter Carriers (Doc. 12) and defendant Marvin T. Runyon (Doc. 14) are hereby GRANTED. The clerk is directed to enter judgment of dismissal in favor of the defendants. IT IS SO ORDERED this 5th day of January, 1999, at Wichita, Ks.

---

No. 97–1324. *Cf.* 42 U.S.C. § 2000e–2(c).