**Pamela BERGERON, Plaintiff,**

v.

**William J. HENDERSON, U.S. Postmaster General, et al., Defendants.**

**No. Civ. 98–362–P–C.**

United States District Court, D. Maine.

June 2, 1999.

Cynthia Dill, Portland, Maine, for plaintiff.

David R. Collins, AUSA, Office of the U.S. Attorney, Portland, Maine, Jay P. McCloskey, United States Attorney, Bangor, Maine, for defendant.

Donald F. Fontaine, Fontaine & Beal, P.A., Portland, Maine, James L Linsey, Cohen, Weiss & Simon, New York City, for defendant Maine Merged Branch National Association of Letter Carriers AFL—CIO.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Pamela Bergeron filed a six-count Complaint against Defendants, United States Postmaster, the Maine Merged Branch 92, National Association of Letter Carriers ("the Union"), and Paul Robinson and Tom Ostrowski in their individual capacities (Docket No. 1). In Count III, Plaintiff alleges that the Union sexually harassed and discriminated against her in violation of Title VII, 42 U.S.C. § 2000e *et seq.* On January 26, 1999, the Union filed a motion to dismiss Count III of the Amended Complaint (Docket No. 9). On February 1, 1999, Plaintiff filed a motion to amend the Amended Complaint to add a claim against the Union under the Maine Human Rights Act, 5 M.R.S.A. § 4451 *et seq.* ("MHRA") (Docket No. 15). In its Memorandum of Decision and Order issued on March 30, 1999, the Court granted the Union's motion to dismiss and Plaintiff's motion to amend her Complaint with a claim against the Union under the MHRA. Consequently, Count III of Plaintiff's Second Amended Complaint is a claim against the Union under the MHRA (Docket No. 16, Exhibit A). Now before the Court is the Union's motion for judgment against Plaintiff on Count III pursuant to Federal Rule of Civil Procedure 12(c) (Docket Nos. 30, 32) and Plaintiff's

objection thereto (Docket No. 31). For the reasons set forth below, the Court will grant the Union's motion.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party, "[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "[B]ecause rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true … and draw all inferences in his [or her] favor" *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988) (citing cases). The Court may not grant the Union's motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Accordingly, the Court will set forth the facts stated in Plaintiff's Second Amended Complaint in a light most favorable to Plaintiff.

## II. BACKGROUND

Because the present motion involves only Count III against the Union, the Court will set forth only those facts in the Second Amended Complaint that pertain to the Union. After seventeen years of service as a letter carrier for the United States Postal Service ("USPS"), Plaintiff has resigned from her job and sued the USPS, two individual defendants, and the Union for sex discrimination and harassment. From 1985 until 1994, Plaintiff was sexually harassed by a fellow employee named Bruce Wainwright. Second Amended Complaint ¶¶ 11–15. Finally, in 1994, Plaintiff reported the sexual harassment to her Union representative. *Id.* ¶ 14. The Union steward reported her concerns to the Equal Employment Office ("EEO") and an investigation was undertaken. *Id.* ¶ 16. Although Wainwright was not a member of the Union at the time

the EEO investigation commenced, a member of the Union, who had sexually assaulted Plaintiff in 1985, represented him and failed to adequately represent the female employees who came forward against Wainwright. *Id.* ¶ 17. As a result of the investigation, Wainwright was suspended. *Id.* ¶ 16. Following Wainwright's suspension, however, the sexual harassment continued. *Id.* ¶¶ 19–21.

In 1996, the USPS moved to an annex in Saco, Maine, and Plaintiff's case[1] was placed directly across from Wainwright's case. *Id.* ¶ 22. Plaintiff routinely placed her name on the overtime list in order to earn extra money while male Union members began refusing to work overtime. *Id.* ¶ 24. As a result, the Union ordered Plaintiff to work excessive amounts of overtime, and male Union members filed grievances, which the Union supported, claiming an inequity in the allocation of overtime hours. *Id.* Consequently, male Union members were paid for work they had refused to do that was performed by Plaintiff. *Id.*

The USPS and the Union condoned the continuing sexual harassment of Plaintiff. *Id.* ¶¶ 22–25. On September 5, 1997, Postmaster Robinson called Plaintiff into his office and reprimanded her for thinking about writing a letter complaining about the sexually hostile atmosphere at the USPS. *Id.* ¶ 26. Plaintiff later learned that her Union representative knew why Robinson was calling her into her office and intentionally did not alert her, as he did male Union members who are called into Robinson's office for discipline. *Id.* ¶ 28. In January of 1998, Plaintiff was diagnosed with post traumatic stress disorder and terminated her employment with the USPS.

## III. DISCUSSION

"In the labor-law arena, preemption—the displacement of state law by the force of federal law—is a familiar phenom-

---

1. The Court assumes that a "case" is a postal work station.

enon." *BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, IAMAW District Lodge 4*, 132 F.3d 824, 829 (1st Cir.1997). One way that preemption can occur is by operation of the so-called duty of fair representation. *See id.* at 830. A duty of fair representation is owed by a union acting in its representative capacity, to those on whose behalf it acts and is derived from the union's status as the exclusive bargaining agent. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953). Developed twenty years ago in a series of cases involving alleged racial discrimination by unions, the duty of fair representation implicates section 9(a) of the NLRA[2] and "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."[3] *Vaca v. Sipes*, 386 U.S. 171, 176–77, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). The Supreme Court has noted that upon analyzing a breach of the duty-of-fair-representation claim, "[a]ny substantive examination of a union's performance ... must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n,*

**2.** Section 9(a) of the NLRA provides in pertinent part:

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees ... shall be the exclusive representatives of all the employees ... for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.... 29 U.S.C. § 159(a).

**3.** Duty of fair representation claims are also governed by a six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

**4.** Plaintiff argues that resolution of her claim against the Union under the MHRA is independent of the collective bargaining agreement and, thus, should not be preempted.

*Int'l v. O'Neill,* 499 U.S. 65, 78, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991). The Court has stated that a breach of the duty of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916.

·To resolve preemption, the Court must answer the question of whether the federal duty of fair representation defines the sole duty owed by the Union to its members, or whether state law may impose other duties supplemental to the duty of fair representation and not preempted by it. *See Nellis v. Air Line Pilots Assoc.,* 805 F.Supp. 355, 358 (E.D.Va.1992). Specifically, the central issue raised by this motion is whether federal law preempts the substantive state-law duty derived from the MHRA. The Union contends that Count III, wherein Plaintiff claims that the Union violated the MHRA when she was subjected to sexual harassment and discrimination, is preempted by the federal duty of fair representation Plaintiff disagrees and argues that the Union should be held liable under the MHRA even if such conduct was not sufficiently arbitrary, discriminatory, or in bad faith to be a breach of the federal duty.[4]

Plaintiff's argument is misplaced. Defendants do not contend that Plaintiff's claim is preempted because it requires reference to the collective bargaining agreement. Although section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts a state-law claim " 'if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement,' " *BIW Deceived,* 132 F.3d at 829 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988)), the Union does not contend that section 301 preempts Plaintiff's claim. The Union argues that Plaintiff's state-law claim is preempted by the National Labor Relations Act in that the acts which allegedly subject the Union to liability under the MHRA in this case are no different from those required to establish breach of the duty of fair representation and, therefore, federal law preempts the state cause of action.

A state-law claim is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation. *See BIW Deceived,* 132 F.3d at 830; *Condon v. Local 2944, United Steelworkers of America, AFL—CIO,* 683 F.2d 590, 594–95 (1st Cir.1982); *Peterson III v. Air Line Pilots Ass'n, Int'l,* 759 F.2d 1161, 1168–69 (4th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Sheehan v. U.S. Postal Service,* 6 F.Supp.2d 141, 150 (N.D.N.Y.1997); *Oliva v. Wine, Liquor and Distillery Workers Union, Local One,* 651 F.Supp. 369, 371 (S.D.N.Y.1987). Thus, if the state claim creates no new rights for an employee and imposes no duty on a union not already present under the federal duty of fair presentation, the state claim is preempted. *See Snay v. U.S. Postal Service,* 31 F.Supp.2d 92, 99 (N.D.N.Y.1998).

Preemption in the labor field is not unlimited. For example, it is possible for a union to contractually obligate itself to duties above and beyond the duty of fair representation and be sued under state law for violation of those obligations. *See Nellis,* 805 F.Supp. at 358–60 (discussing *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990); *Int'l Bhd. of Electrical Workers, AFL—CIO v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *Richardson v. United Steelworkers of America,* 864 F.2d 1162 (5th Cir.1989), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990) (all concerning obligations assumed by the respective unions to inspect work environments for unsafe conditions)). State-imposed duties of a union are also not preempted by the federal duty of fair representation if they arise wholly outside the ambit of those obligations circumscribed by the federal duty. *See BIW Deceived,* 132 F.3d at 830; *Condon,* 683 F.2d at 594–95. A court should refuse to apply the preemption doctrine if the regulated activity is merely a peripheral concern of the National Labor Relations Act or touches interests so deeply rooted in local feeling that, in the absence of compelling congressional direction, the court could not infer that Congress had deprived the States of the power to act. *See Goulet v. Carpenters Dist. Council of Boston and Vicinity,* 884 F.Supp. 17, 21 (D.Mass.1994) (citing *Farmer,* 430 U.S. at 296–97, 97 S.Ct. at 1061); *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. 1499, 1513 (D.Kan.1993), *aff'd Anspach v. Sheet Metal Workers' Int'l Ass'n Local No. 2,* 51 F.3d 285, 1995 WL 133385 (10th Cir.1995). In *Farmer v. United Brotherhood of Carpenters and Joiners,* 430 U.S. at 301–02, 97 S.Ct. at 1064, the Supreme Court recognized that a union's infliction of severe emotional distress on a member by its intentional and outrageous conduct is affirmative improper conduct outside the ambit of the those obligations circumscribed by the duty of fair representation. *See also Linn v. Plant Guard Workers,* 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966) (finding that a claim for malicious libel is likewise not preempted by the federal duty of fair representation). Thus, if the duty invoked by the MHRA is sufficiently separate and distinct from the obligations that arise from the federal duty of fair representation so as not to conflict or interfere with its doctrine, Plaintiff's claim is not preempted.

In *Snay v. U.S. Postal Service,* 31 F.Supp.2d at 94, a postal service employee brought an action against the postal service and the union alleging violations of state law, including the New York State Human Rights Law ("NYHRL"). Specifically, the employee alleged that the union failed to fully process her grievances and misled and deceived plaintiff regarding the processing of her grievances. *See id.* at 99. The union argued that the plaintiff's NYHRL claim for sex discrimination was preempted by the duty of fair representation. *See id.* The court agreed with the union and held that the NYHRL claim was preempted by federal law because "the alleged discrimination was in connection with the [u]nion's activities as representative [and] the discrimination claim

cannot be said to 'arise wholly outside the ambit of those obligations circumscribed by a union's duty of fair representation....'" *Id.* (quoting *Condon,* 683 F.2d at 595). Accordingly, because the plaintiff's specific allegations of discrimination involved the union's activities as representative, federal law preempted all state-law claims pertaining to those allegations. *See also Jones v. Truck Drivers Local Union No. 299,* 838 F.2d 856, 861 (6th Cir.1988) ("Unfair representation ... is unfair representation whether by reason of sex discrimination, handicap discrimination, or a willful breach of a responsibility to carry out clear terms of a collective bargaining agreement for the benefit of union members and employees"); *Anspach,* 817 F.Supp. at 1513–14 (holding that employee's state-law claim for intentional infliction of emotional distress was preempted be federal duty of fair representation where claims against the union were based upon the union's alleged participation in and condonation of sexual harassment, its failure to assist employee in opposing sexual harassment, and the union's failure to adequately represent employee in dealings with company); *accord Sousa v. The Stop & Shop Supermarket Co.,* 1999 WL 244643 *1 (D.Mass.) (recharacterizing an employee's state-law disability discrimination claim into a federal question because of the doctrine of complete federal labor law preemption).

▪ The present case is analogous to the court's decision in *Snay.* To determine whether Plaintiff's claim raises any rights separate from those rights secured by the federal duty of fair representation, the Court focuses not on the legal label affixed to the cause of action under state law, but to the conduct that is at the root of the controversy. *See Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination,* 70 F.3d 1361, 1365 (1st Cir.1995) (focusing on "the conduct at the root of this controversy ... as opposed to the descriptive title of sex discrimination given to [plaintiff's] cause of action...."). In her Second Amended Complaint, Plaintiff alleges that the Union discriminated against her based on her sex when it failed in 1985 to adequately represent her to the Equal Employment Office about Wainwright's sexual harassment, when the Union supported overtime grievances of her male co-workers for work she had actually performed, when the Union failed to alert her to attend a meeting with management, and when it failed to stop the sexual harassment and discrimination against her. See Second Amended Complaint ¶¶ 17, 24, 28, 54.[5] The discriminatory acts are all acts that are connected with the Union's activities as her representative. The substance of Plaintiff's discrimination claim is that the Union breached its duty of fair representation by discriminating against her. The federal duty of fair representation forbids a union from discriminating against an employee in its representative capacity. *See Vaca,* 386 U.S. at 190, 87 S.Ct. at 916. The sexual discrimination and harassment claim under state law in this case, thus, creates no new rights, and is subsumed by the duty of fair representation. Furthermore, Plaintiff has not shown that the Union engaged in the type of affirmative misconduct that is particularly abusive or intentionally tortious so as to bring the state claim under the *Farmer* exception to preemption.[6] Plaintiff's claim

5. Count III of the Second Amended Complaint alleges:

   54. The intentional conduct of Maine Merged Branch 92, National Association of Letter Carriers, AFL—CIO constitute unlawful labor practices that discriminated against Pamela Berger-on with respect to her terms, conditions and/or privileges of membership

   because of her sex in violation of ... 5 M.R.S.A. § 4551, *et seq.*

6. In order to characterize the Union's actions as affirmative misconduct that is outside the ambit of those obligations that arise from the duty of fair representation, Plaintiff argues that the Court should consider all of the factual allegations contained in the Second Amended Complaint as against the Union. These facts allege conduct on the part of the

is, thus, governed by the federal duty of fair representation which prohibits a union from discriminating in its activities as a representative of employees against their employers.

## IV. CONCLUSION

Because the allegations in Plaintiff's Second Amended Complaint that make up her discrimination claim against the Union in Count III all pertain to the Union's duties as Plaintiff's representative against the USPS, the claim is subsumed by the duty of fair representation. Thus, Plaintiff's claim in Count III under the MHRA is preempted by federal law. Accordingly, it is **ORDERED** that the Union's motion for judgment on the pleadings be and, it hereby is, **GRANTED** as to Count III.

USPS and the individually named defendants, and Plaintiff does not argue how those facts pertain to the Union. The Court will .not examine the factual allegations in the Second Amended Complaint that do not concern the Union.