**Dwayne JACKSON, Plaintiff,**

v.

**T & N VAN SERVICE, et al., Defendants.**

**No. CIV.A. 99–1267.**

United States District Court, E.D. Pennsylvania.

Sept. 27, 2000.

---

Lawrence S. Krasner, Krasner & Restrepo, Philadelphia, PA, Linda P. Falcao, Law Offices of Linda P. Falcao, Wynnewood, PA, for Dwayne Jackson.

Joseph F. Betley, Capehart & Scatchard, P.A., Mount Laurel, NJ, Paul A. Nappi, Connor and Weber, P.C., Paoli, PA, for T & N Van Service.

Saul J. Steinberg, Sufrin, Zucker, Steinberg, Waller, et al., Camden, NJ, for Christopher Larosa.

Joseph F. Betley, Capehart & Scatchard, P.A., Mount Laurel, NJ, for Harry Murphy, Vince Harrington.

Joseph F. Betley, Capehart & Scatchard, P.A., Mount Laurel, NJ, Dennis George, Dennis George & Associates, Philadelphia, PA, for Don Taddei, Ken Taddei, David Nelson, Russell Taddei.

Steven David Masters, Meranze and Katz, Philadelphia, PA, Claiborne S. Newlin, Meranze and Katz, Philadelphia, PA, for Teamsters Local 676.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Defendant Teamsters Local 676 ("Local 676" or "the Union") has filed a Motion for Reconsideration of this Court's Order denying summary judgment on Plaintiff's claim of aiding and abetting discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"). Plaintiff, an African–American employee of Defendant T & N Van Service ("T & N"), filed this action after being the target of a mock lynching when a white co-employee, Defendant Joseph Larose, forced the loop of a hangman's noose over Plaintiff's head while they worked at a First Union facility in Philadelphia on November 4, 1998. Larose then hollered "skin him!" to two other T & N employees, Defendants Walter Felton and Christopher Felton, who smiled and laughed. Plaintiff was able to remove the noose and reported the incident to T & N supervisors and the police.

After an investigation by T & N, Larose, Felton and Larosa were all suspended with intent to discharge on November 11, 1998. Subsequently, these three employees requested the Union's assistance in gaining their reinstatement to employment.[1] The Union ultimately concluded that the conduct of the three employees did not warrant their discharge and, thus, brought their claims before the Joint Area Committee ("JAC"). The JAC upheld the grievances of Larosa and Felton and ordered their reinstatement without any back pay, but rejected the grievance of Larose and upheld his termination.

Plaintiff has alleged that Local 676 discriminated against Plaintiff's admission into the Union because of race, and, along with the other defendants in this case, violated 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), and the New Jersey Law Against Discrimination ("NJLAD"), in its handling of Plaintiff's claim, its defense of its members, Larose, Felton and Larosa at the JAC hearing, and its willingness to tolerate an atmosphere of discrimination by and among its members. (Second Am. Compl. at ¶¶ 48–54.)

On June 20, 2000, this Court entered a Memorandum and Order granting Local 676's Motion for Summary Judgment on Plaintiff's claims under 42 U.S.C. § 1981 (Count I), 42 U.S.C. § 1985(3) (Count II), and for discrimination under the New Jersey Law Against Discrimination (Count IV). However, because Local 676's Motion and supporting memorandum had neglected to address Plaintiff's claim of aiding and abetting under the NJLAD, the Union's Motion was denied in this regard.

On July 7, 2000, Local 676 filed a motion for reconsideration of this Court's denial of summary judgment on Plaintiff's claim of aiding and abetting discrimination under the NJLAD. Local 676 submits four grounds for why it cannot be held liable for aiding and abetting discrimination under the NJLAD: (1) Plaintiff's state law claim is preempted by the National Labor Relations Act ("NLRA") and Plaintiff's evidence cannot survive summary judgment under the NLRA; (2) the NJLAD limits aiding and abetting liability to "persons"; (3) even assuming arguendo that a union can be held liable under the NJLAD, Plaintiff cannot meet his burden of provid-

---

1. The Union and T & N are parties to a collective bargaining agreement governing the terms and conditions of employment for all permanent drivers, helpers and warehousemen employed by T & N.

ing clear proof of Local 676's participation in, authorization of, or ratification of such discrimination; and (4) Plaintiff's evidence is legally insufficient to allow a finder of fact to find that Local 676 knowingly lent substantial assistance to T & N's alleged discriminatory conduct.[2] For the following reasons, the Union's Motion will be granted.

## I. STANDARD

■ Federal courts are not settled on how to treat motions for reconsideration. *Wiggins v. Boston Scientific Corp.*, No. CIV. A. 97–7543, 1999 WL 200672, *2 (E.D.Pa. April 8, 1999). While such motions are not specifically recognized by the Federal Rules of Civil Procedure, courts have sometimes ruled on motions to reconsider under Rule 59(e) and at other times under Rule 60(b). *Broadcast Music, Inc. v. La Trattoria East, Inc.*, No. CIV. A. 95–1784, 1995 WL 552881, at *1 (E.D.Pa. Sept.15, 1995). However, neither Rule 59(e) nor 60(b) applies to this case since the order Local 676 seeks to have reconsidered is an interlocutory decision rather than a final judgment or order.[3] *See Dayoub v. Penn–Del Directory Co.*, 90 F.Supp.2d 636, 637 (E.D.Pa.2000) (denial of Rule 56 motion is not a final judgment but rather an interlocutory decision).

■ Federal district courts have the inherent power to reconsider interlocutory orders " 'when it is consonant with justice to do so.' " *Id.; see also In re Resource America Securities Litig.*, No. CIV. 98–

5446, 2000 WL 1053861, at *2 (E.D.Pa. July 26, 2000). "Because of the interest in finality, however, courts should grant motions for reconsideration sparingly." *Dayoub*, 90 F.Supp.2d at 637; *In re Resource America*, 2000 WL 1053861 at *2.

## II. DISCUSSION

■ A person aids and abets a violation of the NJLAD when he knowingly gives substantial assistance or encouragement to unlawful discriminatory conduct.[4] *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir.1998) (following the Restatement (Second) of Torts § 876(b)). The Third Circuit Court of Appeals has recognized on more than one occasion that liability for aiding and abetting may also be based on inaction if it rises to the level of providing substantial assistance or encouragement. *Id.* at 158 n. 11; *Hurley*, 174 F.3d at 126. However, the Third Circuit has emphasized the application of a "heightened standard" for aiding and abetting liability. *Failla*, 146 F.3d at 159.

In its motion for summary judgment, Local 676 had restricted its argument to lack of intent to discriminate and, thus, neglected to address Plaintiff's allegations of aiding and abetting under the NJLAD. As a result, this Court concluded that the conduct which Plaintiff has alleged, if attributable to Local 676, could permit a trier of fact to find that the Union implicitly gave substantial assistance or encouragement to the creation of a racially hos-

---

**2.** On July 19, 2000, Local 676 requested oral argument on its motion for reconsideration because the issues raised by the instant motion as to whether a state law discrimination claim is preempted by the NLRA and whether a union faces liability under the aiding and abetting provision of the NJLAD are issues of first impression in the district courts within the Third Circuit. Despite the above, this Court considered the issues thoroughly briefed and denied the Union's request, by Order dated August 25, 2000.

**3.** Because this Court retains jurisdiction to modify any earlier order until all claims are adjudicated as to all parties, the fact that the

instant motion was untimely filed does not bar considering the Union's reconsideration motion. *Dayoub*, 90 F.Supp.2d at 637 n. 1.

**4.** Six factors may be examined to determine whether a defendant provided "substantial assistance": the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other, his state of mind, and the duration of the assistance provided. *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 n. 27 (3d Cir.1999) (citations omitted), *cert. denied*, — U.S. —, 120 S.Ct. 786, 145 L.Ed.2d 663 (2000).

tile work environment at T & N. *See Jackson v. T & N Van Serv.*, No. CIV. A. 99–1267, 2000 WL 792888, at *6 (E.D.Pa. June 20, 2000) (citing *Baliko v. Stecker*, 275 N.J.Super. 182, 645 A.2d 1218, 1222–23 (1994)). Now, the Union has asked this Court to consider four grounds for granting reconsideration.

First, Local 676 argues that Plaintiff's state law claim is preempted by the NLRA. In support of this contention, Local 676 explains that the NLRA imposes a duty on a union to fairly represent those on whose behalf it acts and "this duty includes a statutory obligation to serve the interests of all for whom the union bargains 'without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" (Union's Mem. In Supp. Of Recons. at 2.) Thus, Local 676 contends that because Plaintiff's aiding and abetting claim against the Union lies entirely within the boundaries of the Union's duty of fair representation, the cause of action is preempted.

■ In a recent case decided by the Third Circuit, our appellate court, in determining whether the NLRA preempted a Virgin Islands statute, outlined the different ways in which a federal law may preempt a state law.[5] In doing so, the Third Circuit observed that:

> although the NLRA neither contains an express preemption provision nor indicates a congressional intent to usurp the entire field of labor-management relations, courts have often found state laws

impliedly preempted by conflict with the NLRA, its express provisions as well as its underlying goals and policies, on the ground that the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives" of Congress.

> *St. Thomas–St. John Hotel & Tourism Assoc. v. Government of the United States Virgin Islands ex rel. V.I. Dept. of Labor*, 218 F.3d 232, 238 (3d Cir.2000). This general rule that requires state laws to yield to the federal enactment when it is clear that the activities which the state purports to regulate are protected by § 7 of the NLRA, or constitute an unfair labor practice under § 8, was initially set forth in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

■ In the instant case, the Union contends that Plaintiff's claims fall clearly within the ambit of the union's duty of fair representation.[6] "The duty of fair representation is a judicially created rule established due to the status of labor unions as the exclusive bargaining representative for all employees in a given bargaining unit." *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 187 (E.D.N.Y.2000). "This duty is derived from sections 8(b) and 9(a) of the NLRA, 29 U.S.C. §§ 158(b) and 159(a), which authorize a union to act as the exclusive representative of all the employees in the collective bargaining process." *Snay v. U.S. Postal Serv.*, 31 F.Supp.2d 92, 99 (N.D.N.Y.1998). The Supreme Court has

---

5. The three general ways in which federal law may preempt state law include: (1) express preemption, which occurs when there is an explicit statutory command that a state law be displaced; (2) field preemption, in which federal law so thoroughly occupies a legislative field that it can be reasonably inferred that Congress left no room for the States to supplement it; and (3) conflict preemption, where a state law makes it impossible to comply with both state and federal law, or when the state law is an obstacle to the objectives of Congress. *St.Thomas–St. John*, 218 F.3d at 238.

6. As stated above, Plaintiff claims that Local 676 discriminated against him by representing Larose, Felton and Larosa, by failing to interview him during the course of its investigation, and by its failure to take action on complaints of racist harassment by Dan Gainey. According to the Union, each of these claims lies within the boundaries circumscribed by Local 676's duty of fair representation. (Union's Mem. In Supp. of Summ. J. at 3.)

explained the basis and scope of this duty as follows:

> The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).. "Thus, if the state claim creates no new rights for an employee and imposes no duty on a union not already present under the federal duty of fair representation, the state claim is preempted." *Bergeron v. Henderson,* 52 F.Supp.2d 149, 153 (D.Me.1999) (citing *Snay,* 31 F.Supp.2d at 99).

Preemption does not apply, however, to situations where a union is sued under state law for violating duties that fall outside the range of obligations encompassed by the federal duty of fair representation. *Bergeron,* 52 F.Supp.2d at 153. Indeed,

> [a] court should refuse to apply the preemption doctrine if the regulated activity is merely a peripheral concern of the National Labor Relations Act or touches interests so deeply rooted in local feeling that, in the absence of compelling congressional direction, the court could not infer that Congress had deprived the States of the power to act.

*Id.* Thus, if the duty invoked by the NJLAD is sufficiently separate and distinct from the obligations that arise from the federal duty of fair representation so as not to conflict or interfere with its doctrine, Plaintiff's claim is not preempted. *See, e.g., Farmer v. United Bhd. of Carpenters & Joiners,* 430 U.S. 290, 301–02, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

■ "To determine whether Plaintiff's claim raises any rights separate from those rights secured by the federal duty of fair representation, the Court focuses not on the legal label affixed to the cause of action under state law, but to the conduct that is at the root of the controversy." *Bergeron,* 52 F.Supp.2d at 154 (citing *Chaulk Servs. v. Massachusetts Comm'n Against Discrimination,* 70 F.3d 1361, 1365 (1st Cir.1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2525, 135 L.Ed.2d 1049 (1996)). Here, Plaintiff has alleged that "Defendant Teamsters Local 676 discriminated against plaintiff because of race, and aided and abetted the other defendants in their violations of the law ... in its handling of plaintiff's claim, in its defense of its members at the grievance, and in its willingness to tolerate an atmosphere of discrimination by an among its members." (Second Am. Compl. at ¶ 48.) Plaintiff further alleges that members of Local 676 abused and harassed African American employees of T & N Van Service, and that the Union failed to take any action to stop harassment in response to complaints. *Id.* at ¶ 52. A closer review of these allegations shows that although Plaintiff is challenging the actions of Local 676 as a non-union member, the substance of Plaintiff's discrimination claim still focuses on Local 676's activities as representative of its members. Because Plaintiff's specific allegations of discrimination derive from the Union's investigation of the grievances filed by Larose, Felton and Larosa and the Union's investigation of former T & N employee Dan Gainey's complaints of racial harassment, federal law preempts Plaintiff's state law claim under the

NJLAD.[7] *See Bergeron*, 52 F.Supp.2d at 154 (sexual discrimination and harassment claim under Maine Human Rights Act created no new rights and was subsumed by duty of fair representation under NLRA); *Snay*, 31 F.Supp.2d at 99 (alleged sex discrimination under New York State Human Rights Law involving union's activities as representative was preempted by NLRA); *Rodolico*, 96 F.Supp.2d at 188–89 (contribution claim under New York State Human Rights Law preempted by federal law); *see also Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 861 (6th Cir.1988) ("Unfair representation ... is unfair representation whether by reason of sex discrimination, handicap discrimination, or a willful breach of a responsibility to carry out clear terms of a collective bargaining agreement for the benefit of union members and employees."), *cert. denied*, 493 U.S. 964, 110 S.Ct. 404, 107 L.Ed.2d 370 (1989). In coming to this conclusion, this Court is mindful of New Jersey's interest in fighting employment discrimination and that other cases may present different factual circumstances where permitting a cause of action under the NJLAD to proceed would not result in state regulation of conduct that Congress intended to protect. *Cf. Linn v. United Plant Guard Workers*, 383 U.S. 53, 61, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). However, Local 676's conduct in this case involves investigating complaints or grievances and, thus, implicates the Union's obligation to ensure non-discriminatory, good faith representation of the employees within the T & N bargaining unit. Such conduct is regulated by the NLRA. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Local 676 also contends that a union cannot be liable for aiding and abetting discrimination because the NJLAD only imposes liability upon any "person" who aids and abets discriminatory practices, and "person," according to Local 676, was intended to mean an "individual." (Union's Mem. In Supp. of Summ. J. at 5.) Under N.J.S.A. 10:5–12(e), the statute specifically states that it is unlawful discrimination "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." However, the definition section of the NJLAD clarifies this matter by providing that: "As used in this act, unless a different meaning clearly appears from the context: a. 'Person' includes one or more individuals, partnerships, associations, organizations, *labor organizations*, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5–5 (emphasis added). Moreover, the New Jersey Legislature has directed that the language of the NJLAD should be liberally construed in furtherance of the statutory purpose to root out discrimination. *See Gardenhire v. New Jersey Manufacturers Ins. Co.*, 333 N.J.Super. 219, 754 A.2d 1244, 1247–48 (2000) (employer's workers' compensation insurer and workers' compensation adjuster employed by insurer could be potentially liable for aiding and abetting discrimination under NJLAD). Based on the above, this Court finds that labor organizations may be potentially liable under N.J.S.A. 10:5–12(e) for aiding and abetting an alleged NJLAD violation against a plaintiff.

The parties also· dispute whether Plaintiff's claim against the Union for aid-

---

**7.** Plaintiff's citation to *Palladino v. VNA of Southern New Jersey*, 68 F.Supp.2d 455 (D.N.J.1999), is unavailing. *Palladino* involved allegations of fraud against the federal government by a nursing service, its subsidiary, and various employees. In that case, the New Jersey federal district court examined whether the False Claims Act ("FCA") preempted a claim under New Jersey's Conscientious Employee Protection Act ("CEPA"). In concluding that the FCA did not preempt the CEPA claim, the court distinguished *Anco Constr. Co. v. Freeman*, 236 Kan. 626, 693 P.2d 1183 (1985), as a case that dealt with an element of an employment contract, an issue the court recognized as arising out of the NLRA in which solely federal law, and not state law, was applicable. *Palladino*, 68 F.Supp.2d at 468.

ing and abetting T & N in discriminating against Mr. Jackson is a "labor dispute" under the terms of the Norris–LaGuardia Act. According to Local 676, the Act requires "clear, unequivocal and convincing" proof of a union's wrongful conduct before Plaintiff can prevail on his claim. (Def.'s Mem. In Supp. of Summ. J. at 11–12) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 737, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

"Section 6 of the Norris–LaGuardia Act, 29 U.S.C. § 106, applies in federal court adjudications of state tort claims arising out of labor disputes[,]" and requires a plaintiff to present clear proof of a union's actual participation in or actual authorization of unlawful acts, or of ratification of such acts after actual knowledge thereof. *Fry v. Airline Pilots Ass'n Int'l*, 88 F.3d 831, 841 (10th Cir.1996). That section was designed to protect unions from liability " 'for damage done by acts beyond their practical control.' " *Security Farms v. Int'l Bhd. Of Teamsters*, 124 F.3d 999, 1012 n. 13 & 1014 (9th Cir.1997) (quoting *Gibbs*, 383 U.S. at 737, 86 S.Ct. 1130).

Section 113(c) of the Act defines "labor dispute" as including "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C.A. § 113(c). The Supreme Court has held that "[t]he term 'labor dispute' must not be narrowly construed, the critical element in determining whether the Act applies being whether ... 'the employer-employee relationship [is] the matrix of the controversy.' The existence of noneconomic motives does not make the Act inapplicable." *See Jacksonville Bulk Terminals v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 703, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982) (citations omitted).

Although Plaintiff attempts to distinguish the instant action based on his claims of race discrimination, this Court finds that Plaintiff's allegations that Local 676 aided and abetted T & N's racially hostile work environment by assisting Larose, Felton and Larosa in their efforts to gain reinstatement and through its handling of complaints from Dan Gainey and Bob Crist turns on the Union's function as the bargaining agent for T & N's employees. Under such circumstances, the *Gibbs* clear proof standard applies, and a preponderance of the evidence is insufficient to survive a motion for summary judgment by the Union. *Fry*, 88 F.3d at 842. Thus, in order to satisfy § 6, Plaintiff must provide evidence showing some definite and substantial connection between Local 676 and the unlawful acts. *Id.*

Finally, Local 676 argues that the evidence of record fails to show that the Union provided substantial assistance or encouragement to the creation of T & N's alleged racially hostile work environment. As noted above, courts look to six factors in order to determine whether a defendant provided "substantial assistance": the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other, his state of mind, and the duration of the assistance provided. *Hurley*, 174 F.3d at 127 n. 27.

In *Gardenhire*, the New Jersey Superior Court considered the above factors in deciding whether the conduct by a workers' compensation insurance carrier and adjuster violated the aiding and abetting provisions under the NJLAD after an investigation by the adjuster resulted in a recommendation that the plaintiff's workers compensation claim be denied. In that case, the African–American plaintiff alleged that he was subjected to racial harassment by his co-employees and supervisors at Emcore Corporation. As a result, the plaintiff began feeling ill and was taken to a doctor, who diagnosed him

with acute stress reaction and prescribed medication. Two weeks after this incident, the plaintiff sought therapy on a regular basis. Subsequently, a workers' compensation adjuster employed by the defendant insurer was assigned to investigate whether plaintiff's medical expenses were covered by the defendant's workers' compensation policy. The adjuster concluded that the plaintiff's work environment did not substantially contribute to his condition and, thus, did not meet eligibility standards set forth by workers compensation laws.

In response to a motion for summary judgment filed on behalf of the defendant insurer and adjuster in *Gardenhire,* the plaintiff argued that these defendants participated in a malicious workers compensation investigation and improperly denied his claims, covered up his complaints of discrimination against Emcore and further exacerbated co-worker hostility against him. However, the court found that plaintiff did not present any competent evidence that the defendants had any role as part of an overall scheme to discriminate against him or that defendants knowingly and substantially assisted Emcore in discriminating against him. Rather, the court found that the mere purpose of the investigation was to determine whether plaintiff sustained a work-related injury. 754 A.2d at 1249–50.

In determining that the defendants did not provide "substantial assistance" to the alleged discriminatory conduct, the New Jersey court reasoned as follows:

> Aiding and abetting discrimination is no less caustic than committing the actual discriminatory act itself. There is no question that the nature of the alleged encouraged act is egregious. Our Legislature has declared that "discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundation of a free democratic State." *Dale,* 160 N.J. at 584, 734 A.2d 1196 (citing N.J.S.A. 10:5–3).

However, analysis of the remaining factors proves fatal to plaintiff's case. Plaintiff simply asserts that Melchiore conducted an improper investigation in violation of applicable workers compensation laws because demonstrated deliberate indifference to his complaints of injury. Plaintiff further argues that Melchiore's wrongful denial of his claim encouraged Emcore's employees and management to continue their racial harassment against him. However, plaintiff is unable to offer proof of the above stated allegations. An unsubstantiated allegation of an improper workers compensation investigation does not implicate § 12(e) liability as such conduct by itself does not rise to the amount of assistance required to be deemed "aiding and abetting."

*Id.* at 1250.

 In the instant action, Plaintiff's allegations center on charges that Local 676 conducted a flawed investigation of the First Union incident and disregarded Mr. Gainey's complaints of racial harassment that occurred prior to the mock lynching of Plaintiff. In response, the Union correctly argues that the processing of grievances on behalf of Larose, Felton and Larosa cannot be viewed as providing substantial assistance to T & N's discrimination since it grew directly from the Union's duty to ensure that its members were only discharged for just cause. As for the complaints made by Dan Gainey, the Union submits that it could take no action on Gainey's behalf because he did not approach the Union until well after he left employment with T & N. Local 676 further argues that it did investigate Gainey's allegations of discrimination, but found "no other minority employees were expressing any concerns about racial or ethnic harassment on the job and that the problem appeared limited to Mr. Gainey as an individual." (Wolfe Aff. ¶ 15.) In any event, a flawed investigation does not subject a party to liability as an aider and abettor. *See Gardenhire,* 754 A.2d at 1250.

In initially denying the Union's Motion for Summary Judgment on Plaintiff's claim of aiding and abetting under the NJLAD, this Court cited *Baliko* for the proposition that a union could be found liable by a jury for implicitly giving substantial assistance or encouragement to the creation of a racially hostile work environment. 2000 WL 792888 at \*6. In *Baliko,* the plaintiffs, female construction workers, brought a sexual harassment action under the NJLAD against the union defendant and two of its members arising out of the members' conduct while on picket lines at a construction site. More specifically, the plaintiffs in *Baliko* claimed that union members abused and harassed them as they passed defendants' picket line during the course of their work by making "foul, vulgar and obscene gestures." The New Jersey Superior Court concluded that the plaintiffs' allegations could permit a trier of fact to find that the union members' harassing conduct was authorized, sanctioned or ratified by the union defendant in an effort to make the conditions of employment at the construction site uncomfortable in order to affect the outcome of the union's dispute with an excavating company. 645 A.2d at 1222–23. In doing so, the court highlighted the state legislature's recognition that a labor union has the potential to critically influence whether a workplace environment will be hostile or welcoming to women and minorities whom the NJLAD seeks to protect against employment discrimination. *Id.* (citing N.J.S.A.10:5–12(b)).

*Baliko* is factually distinguishable from the case at hand in that the claims in *Baliko* arose out of a work stoppage or strike, a situation in which the challenged conduct of the union members on the picket line can more easily be viewed as actions attributable to the union. In the instant action, however, the only claims made by Plaintiff against union members acting on behalf of the union involve Local 676's investigation of the noose incident and of the earlier complaints of racial harassment made by former T & N employee Dan Gainey. As already stated above, such allegations cannot rise to the level of assistance required to be deemed "aiding and abetting."

For all of the above reasons, Defendant Teamsters Union Local 676's Motion for Reconsideration shall be granted.